CASE No. 891.

FRASER & DILL v. CHARLESTON.

1. In a creditor's action a decree was rendered which removed the executor from his office for misconduct, appointed a receiver, and determined matters affecting the assets of the estate in the hands of one of the defendants. Afterwards, such defendant became the assignee of two of the legatees, and as such assignee, applied to be made a party, that a third legatee, who was an infant, be also made a party, and that meantime the receiver be restrained from distributing the estate. *Held,* that the motion should have been granted.

2. Legatees are necessary parties to a creditor's bill, where the executor has been removed from his office for misconduct.

3. The receiver of the estate, appointed in the stead of the executor so removed, does not represent the legatees.

4. This case distinguished from *Rice* v. *Mahaffey,* 9 *S. C.* 281.

5. Where legatees make an absolute assignment of their legacies, the assignees become thereby invested with all the rights of the assignors, and are not affected by the motives which induced the assignment.

6. An assignment of a legacy is not maintenance, because that an action at law will be required to set aside a judgment before the legacy can be recovered.

7. The infant legatee is a necessary party, and the other legatees may require that he should be brought in by proper proceedings.

Before FRASER, J., Charleston, July, 1879.

For a full understanding of this case, see the reports of the case upon previous hearings in 8 *S. C.* 318; *Ib.* 344; 11 *S. C.* 486.

It was, in brief, an action brought by certain creditors of Joseph Whaley, deceased, to have his estate administered, and to have certain certificates of city stock, held principally by the city of Charleston, and transferred upon the books of the corporation after the death of testator, adjudged to be the property of testator.

It was held that many of these certificates were not endorsed by the testator; that his signature was forged. The person who passed these certificates was, afterwards, the sole qualified

executor of Joseph Whaley's will. The court removed the executor from his office and appointed a receiver in his stead.

This, together with the Circuit decree, is a sufficient statement of the case in its former stages.

After the decision, as reported in 11 *S. C.* 486, the city of Charleston procured an assignment from two of the legatees of city stock, as follows :

STATE OF CONNECTICUT.—We, the undersigned, being entitled to two-thirds of a legacy of $20,000 city of Charleston six per cent. stock under the will of our grandfather, Joseph Whaley, and understanding that said stock had been transferred by the city of Charleston after the death of the said Joseph Whaley, by virtue of his signatures endorsed on the scrips thereof ; and said signatures having been questioned and decided by the courts, with one exception, not to be genuine ; we, therefore, declining to take any benefit or advantage from any decision against the validity of said endorsements ; and understanding further, that the endorsements being genuine, the city of Charleston would be justly entitled to said stock, hereby assign, transfer, and set over all right, title and interest which we now have or may hereafter become entitled to in said legacy of two-thirds of $20,000 city of Charleston six per cent. stock to the city council of Charleston, their successors and assigns.

Witness our hands and seals this 2d day of May, A. D. 1879.

JOSEPHINE M. PORTER.    [L. S.]
SABINA MORRIS.          [L. S.]

In the presence of—
    JOHNSON T. PLATT.
    JOHN B. REDDAN.

The city council then filed their information and prayed for an order, as follows :

And now comes the said defendant, the city council, and gives this court to understand and be informed, that since the commencement of this suit and quite recently, to wit, on the —— day of May, 1879, the said defendant has become the lawful owner, by free gift and assignment of and from Josephine M. Porter and Sabina Morris, of all their interest in and to a part of the estate of the late Joseph Whaley.

The said interest is created by the second clause of the will of the testator, Joseph Whaley, which is in these words:

"Item.—I give and bequeath unto my daughter, Maria Evans Morris, twenty thousand dollars in the city of Charleston six per cent. stock, to her, her heirs and assigns, absolutely and forever."

The legatee, Mrs. Morris, died before the testator, leaving three children, Josephine and Sabina, above-named, and a son, who also departed this life before the testator, Joseph Whaley, leaving an only child, a son, who is, it is believed, still a minor. Upon the death of Joseph Whaley, the bequest passed, by force of the statute, to his two granddaughters aforesaid, and to his great-grandson; to each one-third part of the above-recited bequest, and such were their rights and interests in the subject of this suit at its commencement, and they were each one of them necessary and indispensable parties to this cause, because that they had "an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." See 6 *Wall.*

That the city council of Charleston is entitled to stand and be in the place of the testator's granddaughters, and though already a party defendant in another right, the said city council respectfully asks permission to intervene for the rights of the said Josephine M. Porter and Sabina Morris, and to prove the allegations made in respect thereof, in the notice to Mr. Bacot, receiver, which is hereunto appended. To the end that their estate may not be destroyed without an opportunity to defend it.

#### PROPOSED ORDER.

On hearing the statement and petition of the city council, and argument of counsel for all parties before the court, and it appearing that the legal representatives of Maria Evans Morris, namely, Josephine M. Porter, Sabina Morris and —— Morris, are and were, from the commencement of this suit, necessary parties materially interested in the subject matter, and in the object thereof, and that the city council, already a party defend-

ant, has succeeded to the rights of the said Josephine M. Porter and Sabina Morris.

It is ordered that the city council have leave to intervene for the rights and interests of the said Josephine M. Porter and Sabina Morris, as if the complaint were amended, to make them parties, with leave to contest the claims of claiming creditors, and by all lawful means to establish their just rights.

And it is further ordered that plaintiffs do amend their complaint, making —— Morris, the grandson of Maria Evans Morris, a party defendant.

The receiver in this cause, T. M. Bacot, Esq., is hereby ordered and directed to abstain from the distribution of any part of the fund about to come into his possession, until the further order of this court.

The decree of the Circuit judge was as follows:

The above cases came before me at the regular term of the Court of Common Pleas for Charleston county, ending July 11th, 1879, upon (1) a motion to pay out funds to creditors, and, after argument had been heard on the same, upon (2) a motion to allow the city council of Charleston, as assignees of certain legatees of Joseph Whaley, to intervene for the purpose of contesting the claims of certain creditors; and also on (3) a suggestion of counsel that it is the duty of the court to order new parties to be made.

Joseph Whaley, the testator, whose estate is the subject of controversy in these cases, died January 26th, 1872.

The complaint in the principal cause was filed July 13th, 1874, and was a proceeding on behalf of creditors against William Whaley, as executor of last will and testament of Joseph Whaley. Neither heirs, devisees or legatees, were made parties to the proceedings. On April 13th, 1875, G. W. Dingle, special referee, made a report in the case, in which, among other things, he found:

That certain city stock, amounting to $86,342, constituted a part of testator's estate.

The report also contained a statement of judgments, and other claims against the estate, with the amounts due on each, besides other matters not necessary to be here stated.

This report was confirmed by Judge J. P. Reed, by order, dated June 29th, 1875.

From this order there was an appeal to the Supreme Court, in which the only question raised was as to the ownership of said city stock, and involved a question of evidence.

The order of the Supreme Court remanded the case to the Circuit Court, for the purpose of allowing the city council to offer evidence of their right to the stock, or to show how he, Joseph Whaley, may have been divested of his title thereto; the respondents to have the right to offer evidence " in rebuttal."

The order of Judge Reed, June 29th, 1875, above referred to, directed the sale of the plantation on Edisto island.

William Whaley, the executor of Joseph Whaley, who had not answered the complaint on behalf of himself and the remaindermen interested in the real estate, made an application to Judge Reed on November 8th, 1875, for leave to open the decree heretofore made, and this motion was refused.

On appeal to the Supreme Court, the ruling of the judge was sustained, but the court, of its own motion, made an order that the remaindermen, grandchildren of testator, interested in the real estate, should be made parties to the proceeding.

Thus the case was remanded to the Circuit Court with the decree of Judge Reed, modified only as to the claim to the city stock, and with the sale of the real estate suspended until the remaindermen could be made parties, and present their objections, if any. The case was re-opened before the referee as to the city stock, and on the coming in of his report on the testimony taken by him, as directed by the Supreme Court, the case was heard by Judge W. H. Wallace.

In the argument of the case before Judge Wallace, it was urged, as appears from his decree, that if the signatures of Joseph Whaley, on the transfers of city stock were not genuine, then the signatures of Joseph Whaley on notes, which were the foundations of some of the judgments proved in this case, were not genuine.

Judge Wallace, by his decree of April 8th, 1878, held that a large amount of the city stock belonged to the estate of Joseph Whaley, to be administered as a part thereof, and that the re-

ceiver to be appointed should have leave " to institute such proceedings as he may be advised may be proper and necessary to try " the validity of any claims against the estate of Joseph Whaley, and defend such proceeding as may be instituted against him."

From this decree there was an appeal to the Supreme Court, the same grounds being urged in the Supreme Court as to genuineness of the notes covered by the judgments, as were urged in the Circuit Court before Judge Wallace.

The Supreme Court refused to disturb Judge Wallace's decree, and in reference to these judgments uses the following language :

" To set aside what has already been fixed by judgment and not appealed from, or by consent of parties, can only be done by proper proceedings, for which the Circuit judge has made ample provision."

By proper proceedings, to which no exceptions have been taken, Thomas W. Bacot has been appointed receiver, and given his bond as such. In pursuance of an order made during this term of the court, to which the city council consented, a large part of the stock has been accounted for to the receiver, and the balance is to be turned over to him when some additional legislation can be made to authorize it on the part of the council.

W. D. Clancy, one of the masters, having, in pursuance of an order made at this term of the court, submitted his report, an order was made July 2d, 1879, directing the receiver to pay the fees of G. W. Dingle, referee, a counsel fee to the attorneys for plaintiffs, and certain other expenses. This order was made without notice to the corporation counsel, but in open court and by consent of the attorneys of all the creditors who had proved their claims.

W. D. Clancy, one of the masters, in pursuance of an order of reference, submitted a report on claims, dated June 19th, 1879.

While a motion to confirm this report and to pay out the fund to the creditors was under consideration by the court, two motions were made by the counsel for the city council above referred to, to wit :

1. That the city council have leave to intervene as the assignees of Josephine M. Porter and Sabina Morris, grandchildren

of Joseph Whaley, entitled under the will to two thirds (2-3) of a general legacy of $20,000, given in the will to their mother, Maria Evans Morris, with a view to impeach some of the judgments reported in the master's report, as valid and entitled to payment, and thereby save the legacy for the council as assignee, the assignment bearing date May, 1879.

2. That the matter having been brought to the attention of the court, an order should be made calling in all the legatees of Joseph Whaley as parties interested in the fund in court, and entitled to a hearing before any distribution is made. These motions were made without notice to counsel for creditors, but with notice to counsel for the receiver, and without any affidavits in support of them.

The order of the court above referred to, under which the funds have been turned over to the receiver, was made on the —— day of ——, 1879, during term time, and some time after the date of the assignment from the two legatees to the city council, and it is now too late to set up any claim to this fund then held by the city council. *Rice* v. *Mahaffey*, 9 *S. C.* 281. But if this difficulty were out of the way, and such a right as this—a right to impeach judgments for fraud were assignable, (*Story's Eq. Jur.*, § 1040, *g*,) the city council can stand on no higher ground under their assignment than the legatees themselves. Are they, then, necessary parties to this proceeding?

All the cases to which reference has been made by counsel and which are accessible, show that all parties interested in a fund before the court for distribution, are necessary and proper parties, when their rights are traced to a *common source*—as where all parties claim under a deed or under a will. Creditors and legatees do not claim from a common source; the latter claim *under* the will, and the former claim against it. The rights of creditors are paramount to the claims of legatees, whether specific, general or residuary. It is true that where the heir or devisee is interested, he should be made a party, because in this state the legal title to the real estate is in the heir or devisee. It is for this reason that in this case in *Ex parte W. Whaley*, 8 *S. C.* 347, remaindermen have the legal title in the realty. The legal title to the personalty is in the executor or

administrator, and no such reason exist. A decedent has no right to embarrass and jeopardize the rights of creditors by dividing his estate amongst a number of persons, who can never be entitled to it until the debts are paid. The administrator stands in his shoes, and if he commits a *devastavit,* his sureties can be held responsible, and the executor stands in the same relation, and it is the misfortune of those who are the objects of the testator's bounty if they are the victims of his misplaced confidence.

The personal representative of deceased debtor or testator, is the regular representative of all the persons who are entitled to the personal assets, and bound by his *bona fide* acts, so far as third persons are concerned. *Story's Eq. Pl.,* § 140, *note* 4, § 141.

Where the real estate of the decedent is made by statute, *personal assets* for the payment of debts, the heir is not a necessary party to a suit for the administration of assets. *Story's Eq. Pl.,* § 163. See *Curtis' Eq. Prec.* 46, 47.

I conclude, that in no point of view are these legatees, who have waited seven years after death of testator, and five years after the commencement of these proceedings, necessary or proper parties to them.

There has been simply a repetition of the arguments and views presented to the Circuit and to the Supreme Court, without any new showing on their part, and I do not think it necessary to call in the legatees or give any further direction to the receiver, than is given in the decree of Judge Wallace, which has been affirmed by the Supreme Court.

If the legatees have any rights, there is nothing in this case to prevent them from pursuing the proper remedies.

The motions to permit the city council, as assignee of two of the legatees, to intervene and to make a general order calling in the legatees of Joseph Whaley, are refused, and it is so ordered.

As to the distribution of the fund. The only estate applicable to the payment of creditors is that which remains after the payment of the necessary expenses of the administration, and I see no reason in this case why there should be any apportionment of these expenses amongst the creditors. They should be paid out of the fund, and then the balance distributed according

to law.   By law, the order of payment of debts of a decedent is fixed, and is different from that which prevails in the lifetime of the debtor.

It is therefore ordered and adjudged, that after paying the fees and expenses heretofore ordered, the receiver do pay out the funds now or hereafter to come into his hands to the creditors entitled to the same.   First, to the specialty creditors ; and then after they are paid in full, that he do pay the simple contract creditors out of the balance *pro rata*, all necessary expenses, including commissions of the receiver, and fees for his counsel assigned by the court, be properly provided for before the final distribution of the fund ; and that the receiver have leave to apply for an order of reference, to ascertain what sum is proper for these purposes.

From this decree the city council of Charleston appealed upon the following grounds :

1. Because his Honor, Judge Fraser, erred in holding that Josephine M. Porter, Sabina Morris and George Morris, the legal representatives of Maria Evans Morris, were not, from the commencement of this suit, or from the date of the order displacing the executor and appointing a receiver herein, necessary parties to the same.

2. Because his Honor erred in refusing to allow the city council of Charleston, successors to the rights and interests of the said Josephine M. Porter and Sabina Morris, to intervene for such rights and interests, and by all lawful means to establish the same in this cause.

3. Because his Honor erred in not ordering George Morris, grandson of Maria Evans Morris, to be made a party defendant.

4. Because his Honor erred in refusing to enjoin the receiver in this cause from distributing the funds to the creditors, then about to come into his possession, until the rights of the parties to the same could be fully determined.

*Messrs. G. D. Bryan* and *J. B. Campbell,* for appellants.

*Messrs. E. McCrady, Jr., C. R. Miles* and *S. Lord, Jr.,* contra.

July 17th, 1880. The opinion of the court was delivered by McIver, A. J. This is an appeal from an order refusing a motion, submitted by the city council of Charleston, to allow them, as assignees of certain of the legatees of the testator, Joseph Whaley, to intervene for the protection of their rights as such assignees, and to require that another legatee be made a party, and that in the meantime, and until the further order of the court, the receiver be restrained from distributing the funds in his hands belonging to the estate of said testator.

The first question presented is whether these legatees were necessary parties. This is a creditor's bill, and there is no doubt of the general rule that to such a bill legatees are not necessary parties. This, however, is because the executor, being the representative of the legatee, is supposed to be capable and willing to protect their interests, and, therefore, there is no necessity for the presence of the legatees. *Story's Eq. Pl.,* §§ 140, 141, 150. Where, however, the executor is insolvent, the rule is different, (*Calvert on Parties* 26,) and especially where, as in this case, the executor is not only insolvent, but has been removed from office, as it were, upon the ground of misconduct, and has been thereby declared not only incompetent, but has been rendered incapable of representing the legatees. The reason of the rule ceasing, the rule also must give way, and the general doctrine that all persons having an interest in the object of the suit ought to be made parties becomes applicable. As long as there was any one before the court capable of representing the interests of the legatees, no necessity existed for making them parties. But when there is no such representative before the court, and especially when, as in this case, the person appointed as such representative—the executor—has been declared unfit to be entrusted with the administration of the assets of the testator, not merely upon the ground of negligence or want of capacity, but upon the allegation and proof of the grossest fraud, he certainly cannot be regarded by a court of equity as the representative of the legatees, one of whom is a minor, and, therefore, peculiarly entitled to the protecting care of the court. In such a case the legatees must necessarily represent their own interests, and, for this purpose, must be brought before the court as parties. The receiver, though

invested with many powers, and charged with many of the
duties of the executor, cannot be regarded as the representative
of the legatees. He is "the mere hand of the court." As to
persons not parties to the case, even the court cannot, by any
order it may make, affect their rights. The legatees, deriving
their rights under the will, must, of course, take them subject to
any restrictions or conditions contained in the will, and, there-
fore, when there is an executor duly appointed and qualified, the
legatees take their rights subject to the right and duty on his
part, derived from the will, to represent their interests. Where,
however, he is displaced or otherwise rendered incapable of
representing them, they must then represent their own interests,
as there is no power, without their consent, authorized to
appoint a person to represent them.

What steps they may or ought to take for the protection of
their interests, after they have been made parties, we regard it
premature to discuss now. Whether they may, under these
proceedings, contest the validity of some or all of the claims
brought against their testator's estate, or whether it will be
necessary for them to institute separate proceedings against each
of the judgment creditors, or whether they may not apply to the
court for an order *directing* the receiver to contest some or all of
such claims, as he was *permitted* to do by the decree of Judge
Wallace, affirmed by this court, are questions which are not yet
before us in a practical form, and cannot, therefore, properly be
now considered. The legatees, undoubtedly, had a right to be
let in as parties, and to have the receiver restrained from dis-
tributing the fund until they could have an opportunity of as-
serting their rights in such a form as they may be advised.

We do not think this motion comes too late. It may be true
that it would now be too late for the city council, *in its original
character* as one of the defendants, to interpose the objection of
a want of proper parties, (*Clark* v. *Tompkins,* 1 *S. C.* 119;
*Featherston* v. *Norris,* 7 *S. C.* 472,) but, as assignee of the
legatees, it is a totally different person, in law, and entitled to the
rights of its assignors, who, never having been made parties,
never had the opportunity to make the objection. We are
unable to perceive how the case of *Rice* v. *Mahaffey,* 9 *S. C.*

281, applies; for there the defendant sought, *by a new action*, to obtain the benefit of a defence which he had neglected to interpose to the previous action brought against him by the plaintiff, and the court held that this could not be done by a *separate proceeding*. But so far from holding that the desired relief could not be obtained in the original action, language is used which implies that, *in a proper case* and upon a *proper showing*, such relief might be obtained in the original action. The language referred to is : " If by any mistake he may have suffered injury, the court has extensive power, and, upon motion, can grant relief by leave to amend or otherwise, according to the nature of the case. Such proceedings are not separate, but are in their nature supplemental, and are part of the original action." The whole point of that case, therefore, is that a *separate proceeding* was not the proper mode of obtaining the relief desired, but, if obtainable at all, it must be sought under the *original action*.

It is said, however, that though the legatees might have had the right to be made parties for the purpose of contesting claims against the estate of the testator, yet the city council, as their assignees, have no such right. *First*. Because the assignment was not intended to give such right; and, *second*, because, if it did, it purports to assign a right to institute legal proceedings to set aside a judgment on the ground of fraud, and such an assignment would be void " as contrary to public policy, and as savoring of the character of maintenance."

According to the view which we take of this matter the motive which induced the legatees to make the assignment cannot affect its validity. They may have been prompted by the best or the worst of motives ; the fact, nevertheless, appears that it is, in effect, an ordinary assignment of their interest in a legacy, which, not being impeached for fraud, want of consideration or anything of the kind, must have the effect of an ordinary assignment of a legacy. It may be, and doubtless is, true that these ladies, actuated by consideration for the memory of their deceased uncle, highly creditable to them, would not have been willing, for the sake of mere personal gain, to engage in a contest which would render it necessary to cast discredit upon a loved though erring relative, and yet, from consideration for an

innocent third party who had suffered heavy losses by the mis-
conduct of their uncle, they might have been willing to enable
such third party, as far as lay in their power, to repair losses
thus occasioned. At all events, they have made an absolute
assignment of their interests under the legacy to the city council,
who have thereby been invested with all the rights of the as-
signors.

Nor do we think that there is any ground for the position
that the assignment is void as " contrary to public policy and as
savoring of maintenance." The argument to sustain this posi-
tion is based upon the assumption that the thing assigned was
the right to institute proceedings at law to set aside a judgment
for fraud, but according to our view, such an assumption is
without foundation, for the thing assigned was the legacy, or. the
interests of the assignors (two-thirds) in the legacy, given origi-
nally to Maria Evans Morris, and we are unable· to see why
such an assignment is not just as valid as the assignment of any
other chose in action. The fact that it may become necessary
for the assignee to institute legal proceedings to protect the
thing assigned from unjust claims brought against it does not in-
vest the transactions with the character of maintenance, for the
thing assigned is not the mere right to bring an action to set
aside a judgment for fraud.

We think, also, that the grandson of Maria Evans Morris,
who is entitled to the remaining third of the legacy originally
given to her, is a necessary party, and that the motion requiring
the plaintiffs to make him a party should have been granted.
The fact that no motion to that effect has been made on his
behalf cannot affect the question, for, when it is brought to the
attention of the court that any person who is a necessary party,
in order that a complete determination of all the matters in-
volved in an action may be had, has not been made a party, the
court may, of its own motion, require such person to be made a
party in order that there may be a complete and final disposition
of all matters involved in the case, (*Neeley* v. *Anderson,* 2 *Strob.
Eq.* 262,) especially where, as in this case, the absent party is
an infant.

The judgment of the Circuit Court is reversed, and the case is remanded to that court for such further proceedings as may be necessary in conformity with the principles herein announced.

WILLARD, C. J., and McGOWAN, A. J., concurred.